E-FILED
Friday, 24 February, 2023  11:13:21 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **SYDNEY WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-3090** |
| | ) | |
| **JAMIE BRAMBLETT, in her individual capacity, GLEN CURRY, in his individual capacity, ANGELA KRAMP, in her individual capacity, CAMELOT CARE CENTERS, LLC, ERIN HELMHOLZ, and KATHY HENKE,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Before the Court is a Motion to Dismiss (d/e 28) filed by Defendants Jamie Bramblett, Glenn Curry, and Angela Kramp (collectively "Defendants").  Plaintiff Sydney Williams seeks, in Count III of her Complaint (d/e 1), compensatory damages, with interest, and punitive damages against the defendants in their individual capacities for alleged violations of Plaintiff's rights under the Fourteenth Amendment.  Plaintiff's allegations stem from the child removal proceedings in Illinois state courts from 2019 which

resulted in Plaintiff being removed from her parents' custody until she reached the age of majority.  But Plaintiff's allegations against Defendant Bramblett concern the actions Bramblett took in presenting the case to the state Juvenile Court which is protected by absolute immunity.  However, the remaining allegations concern Defendant Curry's and Kramp's actions in directing Defendant Bramblett as supervisors during the Juvenile Court proceedings. Those allegations plainly assert a claim on which relief may be granted under the Fourteenth Amendment and 42 U.S.C. § 1983. And at the pleadings stage, the Court determines that factual development is still required before Plaintiff's claims may be dismissed on the basis of qualified immunity.  Defendants' Motion (d/e 28) is, therefore, GRANTED IN PART and DENIED IN PART.

## I.    LEGAL STANDARD

Defendants move to dismiss the allegations against them and proceed under Federal Rule of Civil Procedure 12(b)(6).  "A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)."  Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, 768 F.3d 510,

526 (7th Cir. 2015)).  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint need not contain "detailed factual allegations" to pass a Rule 12(b)(6) challenge but still must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)).  The moving party bears the burden of establishing that the complaint's allegations, taken as true at the pleadings stage, are insufficient to state a claim.  Marcure v. Lynn, 992 F.3d 625, 631 (7th Cir. 2021).

Before reciting the facts alleged in the Complaint, the Court must first address Defendants' presentation of matters outside the pleadings.  Because a Rule 12(b)(6) motion tests the pleadings, district courts are ordinarily confined to the allegations stated within the complaint.  Fin. Fiduciaries, LLC v. Gannett Co., 46 F.4th 654, 663 (7th Cir. 2022).  If matters outside the pleadings are presented to and not excluded by the court on a motion under Rule 12(b)(6), the court generally must convert the motion under Rule 12(d) to one for summary judgment.  Fed. R. Civ. P. 12(d).

An exception to the Rule 12(d) conversion requirement is the incorporation-by-reference doctrine.  Under the doctrine, a district court may consider, without converting a defendant's 12(b)(6) motion under Rule 12(d), documents outside the pleadings if those documents are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." Gannett, 46 F.4th at 663 (citing Gen. Elec. Cap. Corp. v. Lease Resol. Corp., 128 F.3d 1074, 1080 (7th Cir. 1997)).  District courts have discretion when deciding whether to consider such materials.

Defendants attach and cite to five documents in their 12(b)(6) motion Defendants argue fall within the incorporation-by-reference doctrine.  See Defs.' Mem. (d/e 29) p. 4, n. 2.  Those documents are (1) the transcript of the Shelter Care Hearing held on June 7, 2019 in which Plaintiff alleges Defendant Bramblett made false statements and misrepresented facts at the direction of Defendants Curry and Kramp (Defs.' Ex. A (d/e 31)); (2) the May 16, 2019 Order on First Appearance in which the Circuit Court of the Seventh Judicial Circuit of Illinois, Sangamon County, Juvenile Division granted DCFS the temporary protective custody of Plaintiff and which forms the basis of Plaintiff's action against Defendants (Defs.'

Ex. B (d/e 31-1)); (3) the June 7, 2019 Order as to Shelter Care in which the same court ordered Plaintiff be placed in shelter care pending further proceedings (Defs.' Ex. C (d/e 31-2)); (4) the June 26, 2020 Order of Adjudication in which the same court found Plaintiff to be neglected (Defs.' Ex. D (d/e 31-3)); and (5) the July 24, 2020 Dispositional Order in which the same court ordered Plaintiff be made a ward of the court and placed Plaintiff in the custody of the Guardianship Administrator for the Illinois Department of Children and Family Services.  (Defs.' Ex. E (d/e 31-4)).

The Court agrees with Defendants.  As detailed further below, Plaintiff's claims against Defendants stem from her removal from her parents' custody as a minor based on Defendants' alleged actions in "misrepresent[ing] facts to and with[olding] exculpatory evidence from the juvenile court."  Compl. (d/e 1) ¶ 78.  The alleged actions were, according to Plaintiff, "breaches of duties owed to" Plaintiff and "were a proximate cause of [her] continued withholding from her parents and damages."  Id. at ¶ 79.  The testimony of Defendant Bramblett, which forms the basis of Plaintiff's claims, is contained within the Shelter Care Hearing Transcript and resulted

in the four Orders entered by the Juvenile Division of the Circuit Court of the Seventh Judicial Circuit of Illinois, Sangamon County. Each of those documents are clearly referenced in Plaintiff's Complaint, authentic, and central to Plaintiff's claims. Gannett, 46 F.4th at 663. The Court, therefore, has discretion to, and does, consider the documents without converting under Rule 12(d).

## II.    BACKGROUND

The following facts are taken from Plaintiff's Complaint and the documents attached to Defendants' Motion. The facts taken from the Complaint are accepted as true and all reasonable inferences drawn therefrom are viewed in the light most favorable to Plaintiff. United States ex rel. Berkowitz v. Automation Aids, Inc., 896 F.3d 834, 839 (7th Cir. 2018).

Plaintiff Sydney Williams was diagnosed with a selective immunodeficiency when she was five years old which was characterized by recurrent pneumonias and gastroesophageal reflux disease, i.e., frequent vomiting. Compl. ¶ 2. Plaintiff was diagnosed with gastroparesis when she was six. Id. Plaintiff's condition did not improve during her childhood, and she was diagnosed with multiple illnesses including but not limited to eosinophilic

esophagitis, gastroparesis, mitochondrial myopathy, and cyclical vomiting syndrome.  Id. at ¶ 3.

Plaintiff's parents helped her manage her illnesses while Plaintiff was young.  Id. at ¶ 4.  One way Plaintiff's parents did so was by using an over-the-counter Cannabidiol (CBD) oil sold by Haleigh's Hope, Inc.  Id. at ¶ 6, 19, & 30.  The CDB oil contained trace levels of Tetrahydrocannabinol (THC), though, despite containing no label warning Plaintiff or her parents of that.  Id. at ¶ 6, 30, 32.  Those trace levels of THC triggered a positive TCH lab test performed on Plaintiff while she was being treated at a hospital for dizziness, nausea, and vomiting.  Id. at ¶ 6.

Once a doctor at the hospital received the positive THC test, the doctor concluded that Plaintiff was being abused by her parents and placed a hotline call to the Illinois Department of Children and Family Services (DCFS).  Id. at ¶ 7.  Defendant Jamie Bramblett was assigned to Plaintiff's case as lead investigator and caseworker under the supervision of Defendants Glenn Curry and Angela Kramp, each a Public Service Administrator at DCFS with supervisory duties over Bramblett.  Id. at ¶ 35.  According to the Complaint, Defendant Bramblett testified at a June 7, 2019 Shelter

Care Hearing that "she reviewed [Plaintiff's] medical records and there was no diagnosis to explain Sydney's dizziness, nausea, and vomiting." Id. at ¶ 36. According to the Shelter Care Hearing Transcript, Defendant Bramblett testified that Plaintiff had been hospitalized nine times in five different states in the two years prior to the hospital visit. Defs.' Ex. A at 22–23. As a result of that testimony, the Juvenile Court ordered Plaintiff be placed in shelter care. Defs.' Ex. C.

Plaintiff alleges that the testimony provided by Defendant Bramblett was "untruthful and misleading." Compl. at ¶ 36. Plaintiff further alleges that Defendant Bramblett "distorted the truth by limiting the review of medical records to the 2-year period preceding the report of abuse." Id. at ¶ 38. According to Plaintiff, Defendant Bramblett "discussed her testimony with her supervisors, Ms. Kramp and Mr. Curry, who were also aware" that Bramblett's testimony was misleading and Bramblett "could not have single-handedly limited review of the medical records to the 2-year period preceding the report of suspected abuse." Id. at ¶ 41. Plaintiff alleges that Defendants Bramblett, Kramp, and Curry all came to possess "new and additional information" after the June 7,

2019 Shelter Care Hearing but "refused to reconsider their position" on the removal of Plaintiff from her parents' custody "or notify the Juvenile Court" of the new information.  Id. at ¶ 43.

These alleged acts by Defendants Bramblett, Kramp, and Curry led to the eventual removal of Plaintiff from her parents' custody on May 3, 2019.  Id. at ¶ 11.  Plaintiff was placed in the Illinois foster care system until September 2020, the month in which she turned 18 years old.  Id. at ¶ 12 & 40.  After that, Plaintiff returned to her parents' home as her permanent residence. Id. at ¶ 13.

Plaintiff filed this lawsuit on June 2, 2022.  See Compl.  In Count III of her Complaint, Plaintiff alleges that the actions by Defendants Bramblett, Kramp, and Curry constitute violations of her Fourteenth Amendment right to familial relations.  Id. at 72–76; see also id. at 50–58.  Defendants now move to dismiss the claims against them.

### III.   ANALYSIS

Defendants raise several challenges to Plaintiff's Complaint. Defendants first argue that Plaintiff's claims are jurisdictionally barred by the Rooker-Feldman doctrine, which holds that federal

courts do not have jurisdiction to consider certain claims arising from state court proceedings.  Defendants also argue that Plaintiff's Complaint does not, on its face, adequately state a Fourteenth Amendment due process claim.  Moving to immunities and affirmative defenses, Defendant Bramblett argues that she is absolutely immune from any claims against her while Defendants Curry and Kramp argue that no claims can proceed against them because they are entitled to qualified immunity.

## A.   **The Rooker-Feldman doctrine does not apply here.**

The Rooker Feldman doctrine generally prohibits federal courts, other than the Supreme Court, from considering claims seeking review of state court judgments.  Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482–86 (1983)).  This jurisdictional bar applies to claims "actually raised before the state court" and to claims that are "inextricably intertwined with state court determinations."  Id.

Plaintiff's claims against Defendants approach the border of Rooker-Feldman but do not cross it.  Plaintiff does not seek this

Court's review of the underlying Juvenile Court Orders; indeed, those Orders are moot and unenforceable now that Plaintiff has reached the age of majority. <u>Cf.</u> <u>Felzak v. Hruby</u>, 876 N.E.2d 650, 657 (Ill. 2007) (holding moot the appeal of issues raised in a visitation order once the subject of the visitation order reached adulthood). Plaintiff's claims do not seek relief from any state court order or a declaration that the Juvenile Court Orders were wrongly decided.

Instead, Plaintiff alleges that the way in which Defendants investigated and pursued the removal proceedings in her case violated her rights to due process as guaranteed by the Fourteenth Amendment. Those claims require the review of Defendants' actions in the state court proceedings, not the review of the Juvenile Court's Orders which were the result of those proceedings. That distinct difference renders <u>Rooker-Feldman</u> inapplicable in this case.

**B.    Plaintiff has sufficiently pled violations of her Fourteenth Amendment Right to Familial Relations.**

Defendants next argue that Plaintiff fails to state a claim under the Fourteenth Amendment. The right to familial relations

generally has been recognized as protected by the Due Process Clause of the Fourteenth Amendment.  Brokaw v. Mercer Cty., 235 F.3d 1000, 1018 (7th Cir. 2000) (collecting cases).  This right is "deeply rooted in this Nation's history and tradition," Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977), and includes the "right of a child to be raised and nurtured by [her] parents."  Brokaw, 235 F.3d at 1018.  States may only interfere with a family's right to remain whole if the state "has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse."  Id. at 1019. Supervisory officials may also be liable for the actions of their subordinates if the supervisor is "personally involved in" the alleged constitutional violation by "knowingly facilitat[ing], approv[ing], or condon[ing]" the subordinate's actions.  Milchtein v. Milwaukee Cty., 42 F.4th 814, 824 (7th Cir. 2022) (citing Gill v. City of Milwaukee, 850 F.3d 335, 344 (7th Cir. 2017) and Matthews v. City of East St. Louis, 675 F.3d 703, 708 (7th Cir. 2012)).

Plaintiff alleges in Count III of her Complaint that Defendant Bramblett "misstated facts and withheld exculpatory evidence from the Juvenile Court" during the removal proceedings and that

Defendants Curry and Kramp "were directly aware of [Bramblett's] .
. . misrepresentations" and "exculpatory evidence" and did not
correct Bramblett's actions.  Compl. at ¶ 73–74.  Plaintiff further
alleges that Defendants Curry and Kramp "directed, supervised, or
ratified Bramblett's acts and omissions."  Id. at ¶ 49C.  While, as
stated earlier, these allegations cannot form constitutional claims
which attack the Juvenile Court's rulings or findings, these
allegations adequately state claims that Defendants improperly
interfered with Plaintiff's right to familial relations under the
Fourteenth Amendment.  And because Plaintiff alleges that
Defendants Curry and Kramp "directed" Defendant Bramblett's
actions (see Compl. at ¶ 49C), Plaintiff has alleged "enough to affix
liability" to Curry and Kramp as supervisors.  Brokaw, 235 F.3d at
1014 (collecting cases and holding that allegations that a supervisor
directed actions which eventually led to a minor's removal were
sufficient to state a claim).  Defendants Curry's and Kramp's
respondeat superior defense, therefore, does not defeat Plaintiff's
claims.

　　　Defendants point to the Order on First Appearance, the
Shelter Care Hearing Order and Transcript, and the other Orders

entered by the Juvenile Court to argue against this finding.

Defendants argue that "there [was] ample evidence giving rise to a

reasonable suspicion that Plaintiff was abused or neglected or in

danger of neglect.  Def. Mem. at p. 10.  Defendants' argument is

that Plaintiff's claims cannot proceed because the Juvenile Court's

Orders were appropriate based on the evidence.  But that argument

is one which seeks this Court's review of the Juvenile Court's

Orders, in other words, precisely that which would be barred by

Rooker-Feldman.  More to the point, though, is the fact that

Plaintiff's allegations are that Defendant Bramblett, in concert with

and at the direction of Defendants Curry and Kramp, deprived

Plaintiff of her constitutional rights by initiating and continuing an

investigation and removal proceedings when they possessed

evidence which would have tended to negate the need for removal.

Therefore, Plaintiff's allegations implicate the Defendants and their

actions, not the Juvenile Court.

To the extent Defendants argue Plaintiff's claims fail to

specifically identify what exculpatory evidence Defendants withheld,

such arguments are premature.  At the pleadings stage, Plaintiff is

not required to provide "detailed factual allegations."  Ashcroft, 556

U.S. at 678.  All that is required of Plaintiff is that she provide "a short and plain statement of the claim showing [she] is entitled to relief."  Rule 8(a)(2).  To require more would be to encroach into the realm of summary judgment.  Plaintiff has alleged that Defendants withheld exculpatory evidence from the Juvenile Court.  That is enough at this stage to put Defendants on notice of the claims against them.  On the face of the Complaint, Plaintiff states a claim and Defendants have not carried their burden to show otherwise.

**C.  Defendant Bramblett is absolutely immune from liability, while further factual development is required before addressing Defendants Curry's and Kramp's claim of qualified immunity.**

With no jurisdictional bar and adequately stated claims under the Fourteenth Amendment, the Court lastly considers Defendants' asserted immunities.

### i. Defendant Bramblett is absolutely immune.

Defendant Bramblett argues that she is absolutely immune from Plaintiff's claims against her because the claims stem from the actions Defendant Bramblett took in presenting the removal case to the Juvenile Court.  "[S]ocial workers and like public officials are entitled to absolute immunity in child custody cases on account of

testimony and other steps taken to present the case for decision by the [juvenile] court." Millspaugh v. Cty. Dep't of Pub. Welfare of Wabash Cty., 937 F.2d 1172, 1176 (7th Cir. 1991); see also Milchtein, 42 F.4th at 825. This immunity comes from the absolute immunity afforded to both prosecutors and witnesses for alleged injuries based on their actions in court. Millspaugh, 937 F.2d at 1175. At its core are an individual's "motives in asking a court to do certain things" and the "selection of evidence to present" in advancing the request. Id.; Milchtein, 42 F.4th at 825. And while a social worker's "acts of applying for physical custody and retrieving the children" are protected by the more fact-intensive protections of qualified immunity, Milchtein, 42 F.4th at 825, "the acts of presenting . . . evidence to (or withholding it from) the [juvenile] court receive [the] greater protection" of absolute immunity. Millspaugh, 937 F.2d at 1176. This is true even if the social worker is proven to have presented or withheld the evidence based on an improper motive because the social worker's actions "could yield no harm . . . unless the court agreed." Id. at 1175.

Plaintiff argues that this immunity should not apply because, in Plaintiff's view, Defendant Bramblett is not like the social

workers at issue in either <u>Millspaugh</u> or <u>Milchtein</u>.  Plaintiff argues

that the social workers in those cases were acting like prosecutors

whereas Defendant Bramblett was a "Child Protection Specialist," a

position that does not serve a prosecutorial function in Illinois.

The Court disagrees.  Defendant Bramblett's title of "Child

Protection Specialist" does not render either <u>Millspaugh</u> or <u>Milchtein</u>

inapplicable.  Neither does the fact that Defendant Bramblett does

not serve a prosecutorial role.  Contrary to Plaintiff's argument

otherwise, neither <u>Millspaugh</u> nor <u>Milchtein</u> were narrow holdings

only applicable to social workers whose specific functions were

prosecutorial.  Indeed, both cases explicitly applied to "social

workers and <u>like public officials</u>."  <u>Milchtein</u>, 42 F.4th at 825

(emphasis added); <u>Millspaugh</u>, 937 F.2d at 1176 (same).  The basis

for that protection was in the immunity afforded to "prosecutors

<u>and witnesses</u>, both of whom are entitled to absolute immunity for

their actions taken in court."  <u>Milchtein</u>, 42 F.4th at 825 (emphasis

added); <u>Millspaugh</u>, 937 F.2d at 1175.  And the reason for the

extension of the prosecutor and witness immunity to social workers

and like public officials is because the presentation of testimony or

evidence to, or the withholding of the same from, a court "is

something that could cause no loss unless the court pressed on to decision." Millspaugh, 937 F.2d at 1175.

The same reasoning applies to Defendant Bramblett's actions here. Even taking the Complaint as true, Plaintiff's allegations against Defendant Bramblett only implicate her actions in presenting evidence to, and withholding evidence from, the Juvenile Court. Those actions are protected by absolute immunity. Milchtein, 42 F.4th at 825; Millspaugh, 937 F.2d at 1176. Accordingly, Plaintiff's claims against Defendant Bramblett must be dismissed.

### ii. Further factual development is required before determining whether Defendants Curry and Kramp are entitled to qualified immunity.

As stated earlier, Plaintiff alleges in Count III that Defendants Curry and Kramp, as supervisors, directed Bramblett's actions and, therefore, caused Plaintiff's constitutional injury. In response, Defendants Curry and Kramp raise the affirmative defense of qualified immunity. Generally, qualified immunity protects government officials performing discretionary functions from suit under 42 U.S.C. § 1983 unless their conduct violated clearly established law of which a reasonable person operating in the

officials' capacity would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635 (1987).  Once a defendant raises the qualified immunity defense, the plaintiff must show that the constitutional question was beyond doubt at the time the defendants acted.  Upton v. Thompson, 930 F.2d 1209, 1212 (7th Cir. 1991).  A plaintiff can accomplish this by either "point[ing] to closely analogous cases decided prior to the defendants' challenged actions," id., or "proving the defendant[s'] conduct was so egregious and unreasonable that . . . no reasonable [officials] could have thought [they were] acting lawfully."  Reed v. Palmer, 906 F.3d 540, 547 (7th Cir. 2018) (internal quotation and additional citation omitted).  This is a fact-intensive question and as such is rarely decided at the pleadings stage.  Id. at 548–49.

Defendants Curry and Kramp argue that Plaintiff cannot point to a sufficiently analogous case to show they violated clearly established law.  But as made clear above, that is not the only method to show a violation of clearly established law.  "[B]inding precedent is not necessary to clearly establish a right."  Brokaw, 235 F.3d at 1022.  Plaintiff alleges that Defendants Curry and Kramp "directed, supervised, and ratified Bramblett's acts" in

making material misrepresentations to the Juvenile Court, and
withholding relevant evidence from the Juvenile Court.  Compl. at
¶¶ 41–43, 49C.  That alleged conduct constitutes an independent
constitutional violation from Defendant Bramblett's alleged
misconduct, see Milchtein, 42 F.4th at 824, and is severe enough
that no reasonable official in Defendant Curry's or Kramp's
positions would have thought what they were doing was reasonable.
See Brokaw, 235 F.3d at 1022 ("Specifically, a reasonable person
would have known that it was unconstitutional to use the
government's power to cause, or conspire to cause, the unjustified
removal of a six-year-old child from his parents in order to destroy
the family.")  And though it is unclear whether the ultimate facts of
this case may fully prove Plaintiff's claims, when the allegations in
the Complaint are taken as true as the must at this stage, the
Complaint sufficiently states claims of violations of clearly
established law.  See id. at 1023.  On the pleadings, Defendant
Curry's and Kramp's assertion of qualified immunity must be
denied.

### D.   CONCLUSION

Plaintiff sufficiently pled claims of violations of her Fourteenth Amendment right to familial relations which are not barred by the Rooker-Feldman doctrine.  On the allegations in the Complain, Defendant Bramblett is entitled to absolute immunity from these claims, while Defendants Curry and Kramp are not entitled to qualified immunity at this time.  It is therefore ordered,

(1)   Defendants' Motion to Dismiss (d/e 28) is GRANTED IN PART and DENIED IN PART.

(2)   Defendant Bramblett is absolutely immune from Plaintiff's claims in Count III of the Complaint, and so the claims against her therein are dismissed without prejudice.

(3)   Plaintiff's claims against Defendants Curry and Kramp may proceed.

(4)   Plaintiff is given leave to file an Amended Complaint pursuant to Federal Rule of Civil Procedure 15 within 14 days of the entry of this Order.  Defendants Curry and Kramp shall file their Answer(s) or other applicable responsive pleading, if any, within 28 days of the entry of this Order.

**IT IS SO ORDERED.**
**ENTERED: February 24, 2023.**
**FOR THE COURT**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**