IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SYDNEY WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-3090 |
| ) | |
| HALEIGHS HOPE, INC., JAMIE L. ) | |
| BRAMBLETT, in her individual ) | |
| Capacity, GLENN CURRY, in his ) | |
| individual capacity, ANGELA ) | |
| KRAMP, in her individual capacity, ) | |
| CAMELOT CARE CENTERS, LLC, ) | |
| ERIN HELMHOLZ, and ) | |
| KATHY HENKE, ) | |
| ) | |
| Defendants. ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants Jamie Bramblett, Glenn Curry, and Angela Kramp's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1). (Doc. 63). For the reasons that follow, Defendants' Motion is GRANTED.

### I.     BACKGROUND

Plaintiff Sydney Williams has filed a six-count amended complaint against several Defendants. (Doc. 59). Plaintiff alleges this case arises out of the purchase of an over-the-counter CBD product when she was a minor and suffered from various illnesses. (Doc. 59 at 2). Unbeknownst to Plaintiff or her parents, the CBD product contained trace levels of THC. (*Id.*) When the THC was detected in Plaintiff's body, a doctor concluded that Plaintiff was a victim of abuse. (*Id.*). Because the family did not know there was THC in

the CBD product, they could not explain to doctors why THC was found in Plaintiff's body. (*Id.* at 3). This eventually led to Illinois DCFS removing Plaintiff from her family on May 3, 2019, when she was 16-years old. (*Id.* at 2-3). Plaintiff was withheld from her family until September 5, 2020, when she returned home upon turning 18. (*Id.* at 3).

Plaintiff alleges the manufacturer of the CBD oil caused the initial removal from her family. (*Id.*) The continued withholding from her family resulted from the DCFS caseworkers' and contractors' misrepresentations and omissions of fact and the withholding of exculpatory evidence. (*Id.*)

According to the amended complaint, Defendant Jamie Bramblett was employed by Illinois DCFS as a Child Protection Specialist. (*Id.* at 4). Defendants Glenn Curry and Angela Kramp were employed by Illinois DCFS as Public Service Administrators. (*Id.*) The motion to dismiss the Court now considers is brought by those Defendants (collectively, "DCFS Defendants").

In Count I, Plaintiff asserts claims against the DCFS Defendants under 42 U.S.C. § 1983 for due process violations under the Fourteenth Amendment. Count IV is a negligence count asserted against Defendant Bramblett and Counts V and VI are negligence counts against Defendant Kramp and Defendant Curry, respectively. The remaining counts are asserted against other Defendants.

II.    **DISCUSSION**

As the DCFS Defendants allege in their motion to dismiss, Jamie Bramblett was dismissed as a Defendant in an Order entered on February 24, 2023. (Doc. 45 at 21). In Plaintiff's motion for leave to amend her complaint, Plaintiff sought to amend her

complaint "to remove Bramblett and claims against Bramblett based on the Court's February 24, 2023 order." (Doc. 57 at 2). While the allegations in Count I in the proposed amended complaint attached to Plaintiff's motion for leave to amend relate to each of the DCFS Defendants, Kramp and Curry are the only Defendants who Plaintiff lists under Count I as having violated her Fourteenth Amendment rights. Plaintiff did not respond to the portion of Defendant's motion seeking to strike the allegations relating to Bramblett. Thus, the Court presumes there is no opposition to Defendants' request. *See* CDIL-LR 7.1(B)(2). Plaintiff did not seek leave to add claims against Bramblett and, in fact, represented that the amended complaint would remove the claims previously asserted against Defendant Bramblett. Therefore, the Court strikes Plaintiff's claims asserted against Bramblett in Count I.

The DCFS Defendants contend the state law claims asserted against them are subject to state sovereign immunity and must be heard in the Illinois Court of Claims. Plaintiff claims the state law claims do not arise from a duty predicated upon the DCFS Defendants' employment with the State and, therefore, sovereign immunity does not apply.

The State Lawsuit Immunity Act provides in part that "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. The Illinois Court of Claims has "exclusive jurisdiction" over "[a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a); *see also T.S. v. County of Cook*, 67 F.4th 884, 891 (7th Cir. 2023). An action brought against a state employee is considered one against the state if:

> There are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Id.* at 892 (citing *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990)). In the negligence claims asserted against each DCFS Defendant, Plaintiff describes the DCFS Defendants' duties and the alleged negligent acts and omissions which resulted in damages. The DCFS Defendants contend the assertion that they were negligent in the performance of their DCFS responsibilities is a claim against the State subject to sovereign immunity. Plaintiff argues that each DCFS Defendant held a Child Welfare Employment License issued by the Child Welfare Employee Licensing Board of the State of Illinois which was held independent of their State employment and changes the analysis.

Additionally, Plaintiff notes there are several requirements to obtain a Child Welfare Employment License. The Child Welfare Employment License is supervised by the Direct Child Welfare Service Employee License Board, which has the authority to revoke or suspend licenses. 20 ILCS 505/5c(a). Plaintiff further asserts that the professional duties owed by Defendants under their Child Welfare Employment Licenses and under the standard of care apply whether they are employed by the State or by a private child welfare agency. Moreover, negligence actions have been brought against child welfare employees at private entities for violations of their professional standards of care, similar to the alleged violations here. Therefore, Plaintiff contends that because Defendants are licensed child welfare employees and have professional duties, their

source of duty is derived independent of State employment and sovereign immunity does not apply.

In addressing whether a state employee acted beyond the scope of her authority, the relevant inquiry is whether "the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *See T.S.*, 67 F.4th at 892 (citation omitted). Plaintiff alleges each DCFS Defendant performed several negligent acts and/or omissions that clearly fall within the scope of being a DCFS "Child Welfare Employee." The State through DCFS solely has the authority to investigate allegations of child abuse and to take action to remove children from their guardians if that step is deemed necessary. 20 ILCS 505/21. Defendants note that, while DCFS may utilize contractors to perform this work, there is no "private sector" for the work—only a DCFS employee or contractor has an obligation or the authority to investigate neglect or abuse. *Cf. Toth v. England*, 348 Ill. App.3d 378, 390 (2004) (noting that the defendant, a social worker on contract with the Illinois Department of Aging "has absolutely no obligation to investigate elder abuse claims on her own as a citizen of the State of Illinois. It is only by virtue of England's employment . . . that she has any obligation to investigate such cases."). Despite Plaintiff's assertions in her response concerning the DCFS Defendants' Child Welfare Employment Licenses, it is apparent from the allegations of the amended complaint that the alleged acts and omissions of the DCFS Defendants occurred within the scope of their authority as state employees performing DCFS responsibilities.

Turning to the source of the duty alleged to have been breached, Plaintiff alleges each of the three propositions discussed in *T.S.* are not present in this case because

Plaintiff is not alleging a breach of duty that arose solely due to the DCFS Defendants' State employment. Plaintiff contends the DCFS Defendants also owed a duty to the public by virtue of their licensures and the professional standard of care owed by child welfare employees. Plaintiff further asserts the Child Welfare Employee Licenses are required for both public sector and private agency employees providing child welfare services. Furthermore, Plaintiff alleges the duty breached by the DCFS Defendants is one owed under the professional standard of care for the child welfare industry.

Plaintiff cites *Brandon v. Bonell*, 368 Ill. App.3d 492 (2d Dist. 2006) for the proposition that DCFS Defendants are professionals and "professionals employed by the State, such as public defenders and doctors at state hospitals, are not protected by sovereign immunity when they breach a professional duty owed by every member of that profession." *Id.* at 506. "Because a professional duty derives from the duty of care imposed by one's status as a professional, this is an independent duty that does not arise solely from one's employment, and, thus a breach is not protected by sovereign immunity." *Id.*; *see also Janes v. Albergo*, 254 Ill. App.3d 951, 964-66 (1st Dist. 1993) (finding that dismissal based on sovereign immunity was erroneous when the duties that doctors and nurses employed at a State-owned facility derived from standards employed by the profession rather than State employment); *Loman v. Freeman*, 375 Ill. App.3d 445, 453-455 (4th Dist. 2006) (non-practicing veterinarian who was a professor at a State school was not covered by sovereign immunity because the duty he owed derived from an "obligation to a state regulatory agency," not from his State employment); *Sellers v. Rudert*, 395 Ill. App.3d 1041, 1053 (4th Dist. 2009) (finding that because "the Athletic

Trainers Act demonstrates the existence of a standard of care for athletic trainers, and thus a duty of care independent of state employment exists for athletic trainers" of football team at a State university, the trainer was thus not protected by sovereign immunity). Plaintiff contends the DCFS Defendants are akin to the licensed professions recognized as owing professional duties in *Janes*, *Loman*, and *Sellers*.

The Court concludes, however, there is no question that DCFS Defendants would not have owed a duty to Plaintiff absent their state employment. The requirement that DCFS possess a Child Welfare Employment License does not change the analysis given that the license is required for one thing: to perform work for DCFS. *See* 20 ILCS 505/5c(a) ("[A]ll child protective investigators and supervisors and child welfare specialists and supervisors employed by the Department or its contractors shall be required to demonstrate sufficient knowledge and skills to obtain and maintain the license."). Plaintiff's allegations within each of the negligence counts pertain to the alleged failure of those Defendants to perform their duties as DCFS employees. Plaintiff does not explain how the licenses could impose a duty to the public, independent of Defendants' DCFS employment. As in *T.S.*, the allegations of the amended complaint leave "no doubt" that the source of any duty owed by the DCFS Defendants to Plaintiff "comes from [their] state employment." *T.S.*, 67 F.4th at 893. It thus follows that the DCFS Defendants owed no duty to Plaintiff outside of the context of their DCFS work.

Regarding "normal and official functions," the inquiry concerns whether the alleged breach "involved matters ordinarily within the normal and official functions" of the state employee, which is an inquiry that "overlaps to some extent" with the first

prong. *T.S.*, 67 F.4th at 893 (internal quotation marks and citation omitted). Because Plaintiff's negligence claims against the DCFS Defendants are premised on the "normal and official functions" those State employees allegedly failed to perform or inadequately performed, the allegations clearly involve matters that are ordinarily "normal and official functions" of a DCFS Child Welfare employee.

This Court is not persuaded by *Griffin v. Poynter*, 2022 WL 16836605 (C.D. Ill. Nov. 9, 2022), wherein the Court held defendants, who were DCFS employees, had a duty based on their Child Welfare Employee License licensing standards and the Abused and Neglected Child Reporting Act, 325 ILCS 5/4, and not solely due to their state employment. *Id.* at *4. The Court in *Griffin* determined that defendants "had a generalized public duty, not merely a duty arising from an employee relationship." *Id.* The Court found that the defendants could not show that the duty alleged to have been breached was not owed to the public generally or that their duty to the plaintiff existed solely based on their state employment. *Id.*

This Court notes that *T.S.* was decided after *Griffin* and the analysis in *Griffin* simply cannot be reconciled with the analysis in *T.S.* and its discussion of the Illinois Supreme Court's reasoning in *Healy*. *T.S.* makes clear that the license requirement to perform work for DCFS does not also impose a duty on the public independent of DCFS employment. Attached to Defendant's motion is a recent Illinois circuit court decision which also considered whether defendants who were DCFS employees were entitled to sovereign immunity and which held that it was required to follow *Healy*, an Illinois Supreme Court case, rather than *Griffin*. *See McDonald v. Shinall*, No. 2022 L 008694, Mem.

Op. and Order (July 18, 2024) (Circuit Court of Cook County), Doc. 64-1. The court in *McDonald* determined that because each of the negligent acts fell within the "jurisdictional purview of DCFS which can only act through its [defendant] agents," who perform services "unique to child protection and not generally afforded to the public at large," the defendants were entitled to immunity. (Doc. 64-1 at 7). The same is true here. This Court is bound by the Seventh Circuit's decision in *T.S.* and the Illinois Supreme Court's decision in *Healy*, which establish that the DCFS Defendants are entitled to sovereign immunity.

### III.  CONCLUSION

For all of these reasons, the state law claims asserted against the individual Defendants are equivalent to suits against the state and are barred in federal court by sovereign immunity. The Illinois Court of Claims has exclusive jurisdiction over such claims. Therefore, Defendants Jamie Bramblett, Glenn Curry, and Angela Kramp's Motion to Dismiss Counts IV, V, and VI [Doc. 63] is GRANTED. Counts IV, V, and VI are Dismissed without Prejudice. The Court also strikes paragraphs 60-63 in Count I of the Amended Complaint, which Plaintiff filed against Defendant Bramblett without obtaining leave of Court.

ENTER: March 11, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE